DEALERS HOBBY, INC., Appellant,

v.

MARIE ANN LINN REALTY CO.,
Appellee-Cross-Petitioner,

v.

ABILD CONSTRUCTION COMPANY,
INC., Appellee to Cross-Petition,

v.

SAVAGE AND VER PLOEG, Appellee
to Cross-Petition.

No. 2–58831.

Supreme Court of Iowa.

June 29, 1977.

Johnson, Bauerle & Hester, Ottumwa, for appellant.

Putnam, Putnam & Putnam, Bradshaw, Fowler, Proctor & Fairgrave, Dickinson, Throckmorton, Parker, Mannheimer & Raife, and Jones, Hoffmann & Davison, Des Moines, for appellees.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and HARRIS, JJ.

MOORE, Chief Justice.

Plaintiff tenant brought this action for breach of lease agreement to recover damages after partial collapse of leased warehouse building roof. From trial court order dismissing its petition as it related to damages for breach of warranty, plaintiff has appealed. We affirm.

On June 10, 1959 defendant Marie Ann Linn Realty Company leased a warehouse then under construction at 2150 Delaware Avenue in Des Moines, consisting of 20,000 square feet, to plaintiff Dealers Hobby, Inc. for storage purposes. The commercial lease which the parties executed was to commence in September of that year and continue for a term of 15 years at the monthly rate of $1,166.66. Included in its terms was the following clause:

"SIXTH: That the landlord shall at his own expense maintain in good repair the roof and exterior structure, except as to damage caused by the negligence of the tenants, its agents, employees, invitees or guests. Tenant shall make no alterations or changes of the interior or exterior without first receiving permission from the landlord in writing."

On April 30, 1973 after a heavy rain, a small portion of the roof collapsed and as a result damage was caused to some of plain-

tiff's property stored in the building although only 1000 square feet of the warehouse was rendered unusable by the leakage. An inspection on May 3, 1973 by Des Moines city officials disclosed that the building did not comply with the city building code in several particulars and an "Official Notice of Unsafe Building" was issued by the City's Building Inspection Department. Neither party was aware of any defects in the building prior to the collapse.

Despite the incident, plaintiff continued to use a vast majority of the warehouse for storage during the 18-day period in which the premises were being repaired. When this work was completed the parties renewed the lease and plaintiff continued its occupancy.

In October 1973 plaintiff tenant initiated this action against Marie Ann Linn Realty Company. Plaintiff sought recovery for damages caused to its merchandise and inventory stored in the building together with incidental damages which totaled $16,037.94. These claimed damages were itemized in paragraph 7 of plaintiff's petition. Additionally in paragraph 8 it sought to recover $193,082.23 which sum allegedly represented the difference between the fair rental value of the premises as warranted and the fair rental value of the premises as they actually existed for the entire duration of the lease prior to the collapse.

By way of answer defendant denied plaintiff's claims and further affirmatively alleged plaintiff waived any building defects by continued occupancy and payment of rent.

Subsequently defendant landlord filed a cross-petition against Abild Construction Co., the contractor which built the warehouse, seeking indemnity and contribution. The contractor in turn filed a cross-petition seeking indemnity and contribution against Savage and Ver Ploeg, the architects who designed the building. In addition, plaintiff tenant cross-petitioned against Abild alleging negligent construction.

Defendants landlord and contractor then filed a motion for partial summary judgment seeking dismissal of that portion of plaintiff's petition which sought damages under paragraph 8 for retroactive diminution of the fair rental value of the premises based on the implied and express warranty theories. Plaintiff resisted contending the facts as developed through depositions clearly established it suffered damages in the manner contemplated in the case of *Mease v. Fox,* Iowa, 200 N.W.2d 791. Trial court sustained the motion on the basis, inter alia, the doctrines announced in *Mease v. Fox,* supra, did not apply to warehouse facilities.

Prior to trial defendants landlord, contractor and architect paid plaintiff all the paragraph 7 itemized damages, an agreed amount of $16,921.41. The parties then entered into a stipulation reciting that this payment had been made, plaintiff acknowledged receipt of same, parties defendants denied liability and plaintiff did not waive any right to appeal the ruling sustaining the summary judgment motion. Subsequently the contractor, Abild, dismissed with prejudice its cross-petition against the architects, Savage and Ver Ploeg.

On September 25, 1975 trial court dismissed the remaining portions of the petition as moot. Plaintiff appeals from this final order challenging the earlier interlocutory ruling dismissing its claim for retroactive diminution of the fair rental value of the warehouse premises.

The primary questions presented on this appeal are: (1) whether the doctrine of implied warranty of habitability as announced in *Mease v. Fox,* Iowa, 200 N.W.2d 791 is applicable to a commercial lease of a partially constructed building; (2) what the proper measure of damages is for landlord's breach of an express warranty to maintain and repair the roof of a commercial warehouse; and (3) whether the trial court erred in sustaining defendants' motion for partial summary judgment and dismissing that portion of plaintiff's petition which sought damages under both implied and express warranty theories for the alleged retroactive diminution of the fair rental value.

Our research and study of the record presented here reveals the decisive issue is

one of damages. Determination of the other issues is therefore unnecessary.

■ To determine the appropriate measure of recovery here it is necessary to turn to the general law of damages. It is axiomatic that the principle underlying allowance of damages is that of compensation, the ultimate purpose being to place the injured party in as favorable a position as though no wrong had been committed. *Schiltz v. Cullen-Schiltz & Assoc., Inc.,* Iowa, 228 N.W.2d 10, 20; *DeWall v. Prentice,* Iowa, 224 N.W.2d 428, 434; *Adams v. Deur,* Iowa, 173 N.W.2d 100, 105; 25 C.J.S. Damages § 3, page 626. Stated otherwise, the plaintiff's damages are limited to its actual loss. *DeWaay v. Muhr,* Iowa, 160 N.W.2d 454, 459; 22 Am.Jur.2d Damages, section 47, page 74. Of course, mere difficulty in ascertaining the amount of damages does not alone constitute a cause for denial of recovery. *Basic Chemicals, Inc. v. Benson,* Iowa, 251 N.W.2d 220, 233.

■ The usual measure of damages for breach of a lessor's agreement to make repairs or improvements is measured by the difference between the fair rental value of the premises if they had been as warranted and the fair rental value of the premises as they were during occupancy. *Darnall v. Day,* 240 Iowa 665, 672, 37 N.W.2d 277, 281; 51C C.J.S. Landlord & Tenant § 373(5)a, pages 994, 995; 49 Am.Jur.2d Landlord and Tenant, section 844, pages 811, 812, 813. Additionally a tenant may recover other consequential damages including compensation for injury to his merchandise or business. 11 Williston on Contracts (3rd ed. Jaeger), section 1404, page 563; *City of Miami Beach v. Ellis,* Fla.App., 279 So.2d 335, 337. "The rule to be applied is very largely to be determined from the circumstances." 49 Am.Jur.2d Landlord and Tenant, section 844, page 811.

In applying these rules to the case at hand we bear in mind the admonition cited in *DeWaay v. Muhr,* supra, 160 N.W.2d at page 458 from 25 C.J.S. Damages § 74, pages 849, 850, (1966 vol.):

" ' * * *. Specific rules are subordinate to the general rule that compensatory damages are designed to put the injured party in as good a position as he would have had if performance had been rendered as promised; a given formula is improvidently invoked if it defeats a commonsense solution.' "

It is manifest in consideration of these principles in light of the facts herein presented that no breach of the express covenant of repair occurred until April 30, 1973 when a portion of the roof collapsed at the warehouse premises. Prior to this time neither party had any knowledge of any defects in the structure. Prior to this time plaintiff suffered no harm whatsoever and to allow recovery for a retroactive diminution of the rental value for almost 14 years is in contravention of the aforementioned basic tenets of damages. Peril proceeding injury, of which plaintiff is ignorant, is not a proper element of damages. *Hall v. Town of Manson,* 90 Iowa 585, 58 N.W. 881.

Neither *Mease v. Fox,* supra, nor the New Jersey case of *Reste Realty Corporation v. Cooper,* 53 N.J. 444, 251 A.2d 268 on which plaintiff relies supports plaintiff's position of recovery of damage prior to the time of injury. In *Mease* defendants in their pleadings affirmatively alleged numerous housing code violations existing from the onset of the leasehold term which made the residential premises uninhabitable. One matter specifically alleged was that a tenant had been struck by a falling bathroom ceiling. Finally tenants were forced to vacate when the city had the property declared a public nuisance. *Mease v. Fox,* 200 N.W.2d at 792.

In *Reste Realty Corporation v. Cooper,* supra, the New Jersey supreme court held that where exterior surface water was flooding the first floor of a leased office building placing several inches of water in the rooms, the tenant was entitled to vacate two years before the termination of the lease without liability for rent covering the unexpired term. Thus this case is a classic example of constructive eviction although tenant did not immediately vacate when the defect first became apparent. The damage

would be properly measured from the time the injury commenced, 1961, not from the time the lease was executed in 1959.

■ We believe after careful examination of the pleadings that paragraph 7 of plaintiff's petition which detailed its actual losses fully stated the full amount of recovery it was entitled to.

In *Darnall v. Day,* supra, we stated the ordinary measure of damages. However, as stated previously we have never applied a rule in order to give a plaintiff more than to which it is entitled. Also see *Drager v. Carlson Hybrid Corn Co., Inc.,* 244 Iowa 78, 86, 87, 56 N.W.2d 18, 23; *Jones v. DeMoss,* 151 Iowa 112, 120, 130 N.W. 914, 917.

In *Int'l Harv. Co. v. C., M. & St. P. Ry. Co.,* 186 Iowa 86, 104, 172 N.W. 471, 478, 479, we state: "No rule of the law of damages permits the injured party to receive more than he has lost."

Here those portions of plaintiff's petition wherein it sought to recover its actual loss from April 30, 1973 were properly unaffected by trial court's order. These included damages alleged in paragraph 7 to merchandise and inventory, and incidental expenses covering such items as alternate rental expenses and cleanup work occasioned by the water damage. Under these circumstances where the specific elements of plaintiff's loss were plead in a manner different from Darnall but consistent with the overall theory of compensation inherent in our law of damages, we find plaintiff's arguments that the proper measure of damages was removed from the case are without merit. Therefore the trial court's judgment must be affirmed.

AFFIRMED.