444 So.2d 459 (1983)
LEE COUNTY BANK, Appellant,
v.
Errol B. WINSON, Appellee.
No. 82-2406.
District Court of Appeal of Florida, Second District.
December 30, 1983.
Rehearing Denied February 1, 1984.
*461 Gerald W. Pierce of Henderson, Franklin, Starnes & Holt, Fort Myers, for appellant.
William A. Keyes, Jr., of Stewart, Stewart, Jackson & Keyes, Fort Myers, for appellee.
OTT, Chief Judge.
Appellant challenges a verdict awarding appellee compensatory and punitive damages in a conversion action. Appellee has cross appealed the striking of a nominal damages award. We reverse the award of punitive damages. We reverse and remand the compensatory damages award for recomputation.
On April 2, 1979, appellee approached Harwood, a commercial loan officer at appellant (the "bank"), requesting one hundred per cent financing for an automobile purchase. Appellee testified he advised Harwood of his plans to leave the Lee County area to start a charter fishing business somewhere in the Florida Keys. Harwood denied being so advised. Harwood agreed to lend appellee $1,500 on a single payment promissory note granting to the bank a security interest "in all property of any nature whatsoever owned by [appellee] ... now or hereafter in the possession of or assigned or hypothecated to the Bank, for any purpose... ." In connection with that loan, appellee gave Harwood his girl friend's parents' address, 2413 Gorham Avenue (appellee had been residing there temporarily). Appellee executed the note bearing this address.
Harwood then took appellee to visit an installment loan officer, Greene. Greene agreed to lend the remainder of the purchase price; appellee agreed that the new car would be security for the loan. Unfortunately, the installment loan application, the note, and the security agreement all incorrectly listed appellee's address as 2411 Gorham Avenue. Appellee gave his parents' telephone number to Greene, although no one was living there. Unknown to appellee, the telephone was disconnected three days later. Appellee admitted he did not mention his anticipated departure for the Keys to Greene.
Under the terms of the installment loan security agreement, appellee was required to have automobile insurance with comprehensive and collision coverage naming the bank as loss payee. Appellee, unfamiliar with insurance required by the bank, asked his insurance agent to provide whatever the bank would normally require. The insurance agent issued personal injury protection but failed to include the requisite comprehensive and collision coverage and failed to name the bank as loss payee.
The installment loan security agreement also required appellee to promptly notify the bank if his address changed or if the collateral was removed from the county. The day after the loan transaction was concluded, appellee departed for the Keys. He stayed there a few days, deciding not to open the charter fishing business. Appellee spent a few days in Miami, then moved to American Yacht and Ship Corporation in Fort Lauderdale, where he lived for five to ten days. He made two more moves in the Fort Lauderdale area. During this time he began to work for Professional Aircraft Corporation. At no time did appellee notify the bank of his movements or of the new location of the collateral.
Meanwhile, back in Lee County, the bank attempted to mail appellee's payment book to 2411 Gorham Avenue, but it was returned by the post office. Subsequently, in a letter dated April 13, 1979, and addressed to appellee at 2411 Gorham Avenue, the bank advised appellee it had no record of the required insurance. Appellee testified he received this letter on May 8, 1979. He immediately instructed his insurance agent to change the insurance to comply with the bank's requirements.
The first payment on the installment note was due May 10, 1979. Appellee's check dated May 4, 1979, was transmitted to the bank May 8, 1979. Bank officials confirmed that the payment was timely.
On the morning of May 10, 1979, appellee received a telephone call from his girl friend. She advised him that someone from the bank had come to her home looking for him. Appellee called the bank, *462 asking to speak to Harwood, but he was unavailable. Appellee advised a secretary that someone from the bank was trying to reach him. He also mentioned the new insurance to her. The secretary promised to look into the matter and have someone call appellee.
No one returned the call. That afternoon appellee's car was peacefully repossessed from the parking lot of appellee's place of employment.
Appellee again telephoned the bank that day and talked to Greene. Greene advised that the bank had received appellee's payment but that the insurance was insufficient, whereupon appellee advised that he had corrected the insurance problem. Greene advised that the bank continued to deem itself insecure, therefore, the car would not be returned.
On May 14, 1979, the bank wrote to appellee formally advising him that the car had been repossessed "... due to but not limited to the following reasons, incorrect address, incorrect telephone, lack of proper insurance, and removing the collateral from Lee County without authorization." The letter further advised that the car could be redeemed within ten days if appellee tendered the entire amount due on the installment note; otherwise the car would be sold.
On May 16, 1979, the bank received an insurance endorsement indicating that the proper insurance had been acquired, effective May 8, 1979.
Appellee's attorney by letter dated May 25, 1979, demanded the return of the automobile to appellee, insisting that no default had occurred. The bank refused to comply with the demand and proceeded to sell the automobile in a commercially reasonable manner.
Appellee sued the bank for conversion of the automobile, initially alleging that the conversion occurred when the car was wrongfully repossessed. Appellee was allowed to amend his complaint at trial to allege that the conversion occurred on the date the bank refused to return the vehicle. A jury awarded appellee $2,500 compensatory damages, $5,000 nominal damages, and $25,000 punitive damages. On rehearing, the trial judge commented that the jury was obviously confused on the issue of damages. He thereupon struck the inconsistent award of nominal damages but allowed the compensatory and punitive damages award to stand.
On appeal the bank argues that the evidence was insufficient to sustain the compensatory damages award. We reject this contention and hold that there was sufficient evidence from which a jury could have found that the bank wrongfully refused to return the automobile to appellee. The jury could have believed that appellee informed Harwood that he planned to leave Lee County with the automobile immediately but could be located through his girl friend. Furthermore, the jury could have concluded that much of the confusion and miscommunication in this case was caused when a bank employee filled in the improper address on the security agreement. Finally, appellee secured proper insurance before the repossession occurred and the bank was ultimately notified of this fact. Therefore, the evidence supports a finding by the jury that the bank wrongfully refused to return the automobile to appellee.
We find error as asserted by the bank surrounding the jury instructions on compensatory damages. In the order denying the bank's motion for new trial, the trial court correctly conceded that the jury had been improperly instructed and that the correct measure of damages was the reasonable value of the automobile at the time of conversion less the amount of the bank's security interest plus legal interest to the date of the verdict. See Page v. Matthews, 386 So.2d 815 (Fla. 5th DCA 1980). The bank's interest would include the $1,500 single payment note by virtue of the "cross collateral" clause in that note. The court concluded, however, that appellee was entitled to damages under section 679.507, Florida Statutes (1981), of "an amount not less than the credit service charge plus 10% of the principal amount of the debt or the time price differential plus 10% of the cash price." Because such an amount would have exceeded the $2,500 compensatory damages award, the court *463 reasoned that any error in the compensatory damages instruction was harmless.
Damages under section 679.507 are available when a debtor is in default and a creditor proceeds not in accordance with the provisions of Part V, Article Nine, of Florida's Uniform Commercial Code. See generally Florida Uniform Commercial Code Part V, Art. Nine, Introductory Comments, 19(c) Fla. Stat. Ann. 366 (1966). Implicit in the jury's finding for appellee is a finding that appellee was not in default and that acceleration, default, and repossession were premature or otherwise wrongful. Therefore, damages under section 679.507 were not available. Also, there is no evidence that the bank repossessed and disposed of the collateral not in accordance with the applicable provisions of the Uniform Commercial Code.
Appellee asserts that he is entitled to damages for injury to his credit reputation resulting from the conversion of his automobile. Appellee's complaint stated a cause of action for conversion only. We find no authority to support appellee's contention that such an injury is compensable through a conversion action, and he did not plead a separate tort. Cf. Matthews v. Deland State Bank, 334 So.2d 164 (Fla. 1st DCA 1976) (where plaintiff sued bank for slander of his credit when his car was allegedly wrongfully possessed).
On cross appeal, appellee asks that we reinstate the nominal damages award by adding it to the compensatory damages. He argues that the jury clearly intended to award $27,500 in total damages and that both the $5,000 and $2,500 awards can be sustained as compensatory damages. Appellee cites Cory v. Greyhound Lines, Inc., 257 So.2d 36 (Fla. 1971), in support of his argument. In Cory, the jury reversed amounts to be awarded in consolidated survival and wrongful death actions. The supreme court held that based on the amounts requested it was beyond question that the jury simply transposed the amounts.
In the case sub judice, the jury was instructed on nominal damages as follows:
If you find an invasion of the plaintiff, Errol Winson's rights by conversion you should award at least a [sic] nominal damages. Nominal damages are awarded to indicate an invasion of one's legal rights where, although no physical or financial injury has been inflicted, the underlying claim for conversion has been proved to the satisfaction of the jury.
During the course of deliberations, the jury asked to be reinstructed on the meaning of nominal damages, whereupon the above instruction was re-read without further explanation. At no time was the jury charged that nominal damages are damages of an inconsequential amount. Cf. Fla.Std. Jury Instr. (Civ.) 4.5(f). Nor was the jury instructed that nominal damages are awarded only in the absence of compensatory damages. See Tampa Electric Co. v. Ferguson, 96 Fla. 375, 118 So. 211 (1928).
It is clear that the jury was confused as to the meaning of nominal damages when it returned the verdict. Unlike Cory, the intent of the jury here is not apparent, therefore, we cannot accept appellee's proposition that the $5,000 nominal damages should be reinstated.
We reverse the award of punitive damages. At the close of appellee's case and at the close of all evidence, the bank moved for directed verdict. In this case, the record conclusively shows that the bank's refusal to return the vehicle was based upon the bona fide assertion of its rights under the security agreement and solely to protect its interests. Punitive damages may be properly awarded only where a tort involves malice, moral turpitude, or wanton and outrageous disregard of a plaintiff's rights. Winn & Lovett Grocery Co. v. Archer, 126 Fla. 308, 171 So. 214 (1936). In the instant case, the tort was committed by mistake in the bona fide assertion of a supposed right, without any evidence of malicious motive or wrongful intention. Therefore, the issue of punitive damages should not have been submitted to the jury.
*464 Appellee prevailed on the issue of whether a conversion occurred. The only error to be corrected on remand is the amount of the compensatory damages which should have been awarded. There is no dispute between the parties over evidence presented on the reasonable value of the automobile or the amount due and owing on the two loans. Therefore, the damages question is a mere matter of mathematical calculation applying the equation found in Page v. Matthews. A resubmission of this question to the jury would serve no useful purpose. Consequently, we reverse the award of compensatory damages and remand this cause to the trial court with instructions to compute the damages in a manner consistent with this opinion.
REVERSED and REMANDED.
GRIMES and RYDER, JJ., concur.