**TRAVELTOWN, INC., Plaintiff,**

v.

**GERHARDT INVESTMENT GROUP and Marketing America, Inc., and The Travelers Corporation, d/b/a Murgo & Sanborn, Associates, Defendants.**

No. 78–CV–594.

United States District Court,
N.D. New York.

Feb. 15, 1984.

McPhillips Fitzgerald Meyer & McLenithan, Glens Falls, N.Y., for plaintiff; James D. Horwitz, Glens Falls, N.Y., of counsel.

### MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

This constitutes the court's findings of fact and conclusions of law based upon a non-jury hearing on the issue of damages, liability having been established by default. The background of this diversity action is as follows.

The plaintiff corporation alleged in its complaint that (1) the defendants breached an agreement to arrange financing for plaintiff's commercial development project, and refused to return a consulting and/or finder's fee of $6,000 paid to The Travelers Corporation d/b/a Murgo & Sanborn, Associates ("Travelers Corporation") to secure defendants' services; and (2) the defendants failed to return upon demand certain engineering blueprints that had been sent to Travelers Corporation. The value of the blueprints, as alleged in the complaint, is $30,000.

A default judgment was entered against the defendants on December 20, 1982, but was subsequently vacated with respect to defendants Gerhardt Investment Group and Marketing America, Inc. *Memorandum-Decision and order of August 25, 1983.* 577 F.Supp. 155. By Order filed that same date, this court held that damages of $6,000 were established with respect to the first cause of action, but that a non-jury hearing was necessary for determination of damages against the defaulting defendant with respect to the second cause of action.

A hearing was held on October 5, 1983, at which plaintiff produced two witnesses and documentary evidence as proof of damages. Defaulting defendant Travelers Corporation did not appear despite notice by mail to it and to its attorney of record.

■ According to plaintiff's first witness, Traveltown President Stephen Borgos, the plaintiff corporation was formed to build and operate roadside rest areas that would service various needs of long distance travelers. Plaintiff began its project by engaging the services of Rist-Frost Associates to devise detailed engineering blueprints in accordance with Borgos' general conception of the project. Rist-Frost prepared such plans at a cost of approximately $35,000, which was duly paid by plaintiff.

Borgos further testified that plaintiff then sought financing for construction of the project, and was referred to defendant Travelers Corporation. At the behest of that defendant, plaintiff sent it a copy of the blueprints for review. Later, after it became evident to plaintiff that the financing would not materialize, Borgos repeatedly demanded that the blueprints be returned. They were not.

Plaintiff's next witness, Phil Feena, was one of the engineers associated with Rist-Frost who had worked on the preparation of the blueprints. Feena testified in some detail as to the means by which Rist-Frost determines the cost of their services, as well as the billing methods common to the engineering field in general. He then offered his professional opinion that the fair market value of the blueprints, based on the cost of preparing them, was $35,000.

Based on the evidence adduced at the hearing, plaintiff now asks that damages of $35,000 be entered into the default judgment against Travelers Corporation. Although the court finds that the cost to plaintiff of preparing the plans was $35,000, it nevertheless holds that under the circumstances of this case, only nominal damages may be awarded.

"The usual measure of damages for conversion is the value of the property at the time and place of conversion, plus interest." *Fantis Foods, Inc. v. Standard Importing Co., Inc.,* 49 N.Y.2d 317; 425 N.Y. S.2d 783, 786, 402 N.E.2d 122 (1980). If the property is a type that is dealt in on the market, then the measure of its value is generally determined by reference to the market price. *9 Encyclopedia NY Law Damages* § 182 (1965 ed.); *13 N.Y.Jur.* § 96 (1960 ed.).

In this instance, however, the property converted is a copy of blueprints that were specially prepared by an engineering firm for the plaintiff. As Feena testified, the blueprints were to some extent "site specific", and in any event, are not a product that is normally sold on a market. Given the special nature of the property, the absence of a true "market value" is not extraordinary. As noted in *22 Am.Jr.2d Damages* § 149 at 215:

There are many instances in which the item of personal property destroyed, injured, or taken has no market value in the normal sense of that term. A family photograph, a specially designed machine, a manuscript, some lecture notes, and *plans of a draftsman can each be examples of personal property which have no market value beyond the value of the paper or material which went into their construction.*

(Emphasis added). *See also,* "Measure of Damages for Conversion or Loss of, or Damage to, Personal Property Having No Market Value," 12 A.L.R.2d 902, 906 (observing that, "creations of writers, draftsmen, and the like ... while designed for commercial ends, cannot be said to have any regular market value.").

▆ The absence of a market price does not necessarily preclude a determination of value for the purpose of recovering damages from a tortfeasor where there is some alternative rational means of ascertaining value. *MacGregor v. Watts,* 254 App.Div. 904; 5 N.Y.S.2d 525, 526 (2d Dept.1938) (conversion of two manuscript plays). The primary underlying objective in such instances is the compensation of the injured party for his loss. See "Measure of damages ... no market value," *supra,* 12 A.L. R.2d at 906; *13 N.Y.Jur. Damages* § 9.

▆ Thus, in instances where a tortfeasor has converted, destroyed, or lost *the only embodiment* of an architect's plan, a manuscript, or some other valuable document without an ascertainable market price, courts have fashioned awards based on evidence of the original cost of the property to the plaintiff, or the estimated replacement or reproduction cost. *See, e.g., Veeco Instruments, Inc. v. Candido,* 70 Misc. 333; 334 N.Y.S.2d 321 (S.Ct. Nassau Cty.1972) (conversion of computer programming data by former employee of plaintiff; award based on programming hours required to reproduce the material so as to restore employer to position it occupied); *Newman v. Clayton F. Summy Co.,* 133 F.2d 465 (2d Cir.1942) (loss of musical manuscript; award based on reasonable worth of time and effort to replace manuscript); *Wood v. Cunard S.S. Co.,* 192 F. 293 (2d Cir.1911) (loss of manuscript manual on Greek grammar; award based on reasonable worth of time and effort to replace manuscript); *Austin v. Millspaugh,* 909 Miss. 354, 43 So. 305 (1907) (loss of architect's plans; award based on cost to the plaintiff in producing it); *Mather v. American Express Co.,* 138 Mass. 55 (1884) (converted architect's plans; award based upon replacement value).

In the instant case, plaintiff has been deprived of a copy of its blueprints; it retains another copy. Inasmuch as the cost to replace the converted copy is, presumably, insignificant, the actual loss sustained by plaintiff is equally insignificant. Plaintiff nevertheless seeks to recover the full cost it incurred for commissioning the blueprints. Although the court has considered the matter carefully, it finds no support, in case-law or logic, for awarding plaintiff $35,000 when it has sustained no loss as a result of the conversion. To do so would be to confer an unwarranted windfall upon the plaintiff.

It must be emphasized here that there have been no allegations or evidence that the defendant has made any use of, or realized any profit from, the converted blueprints. Had there been a finding to that effect, the court would perhaps have been able to assign some value to the copy taken by the defendant, for purposes of fashioning an award. *See, e.g., MacMillan Co. v. I.V.O.W. Corp.,* 495 F.Supp. 1134 (D.Vt.1980) (conversion *and unauthorized use* of architect's plans; award based on percentage of defendant's total construction costs); *R.A. Weaver & Assoc., Inc. v. Haas & Haynie Corp.,* 663 F.2d 168 (D.C. Cir.1980) (conversion *and subsequent sale* of engineering plans; jury award more closely reflected sale price than cost to devise plans as sought by plaintiff). Nor has there been any claim that the defendant has infringed any architect's copyright interest in the blueprints, which would implicate different compensatory considerations. *See 5 Am.Jur.2d Architects* § 10.

In short, the conversion of a copy of plaintiff's blueprints has caused plaintiff no cognizable pecuniary loss, and has evidently brought the defendant no cognizable gain. Under such circumstances, only nominal damages may be awarded. *13 N.Y.Jur. Damages* § 7. The court therefore sets nominal damages of $100 in connection with the second cause of action. Whereas the court has already established damages of $6,000 in connection with the first cause of action, and whereas the court finds that there is no just reason for delay of judgment against the defaulting defendant, the court directs the entry of judgment in favor of the plaintiff against The Travelers Corporation d/b/a Murgo & Sanborn, Associates in the total amount of $6,100. Rule 54(b), Fed.R.Civ.P.

IT IS SO ORDERED.